## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

_____

NATHAN VANDER ZWAAG, CHASE TURKSTRA, AND HENRY JON FRERIKS

                                Plaintiffs,

vs.

GRETCHEN WHITMER, in her official capacity as Governor for the State of Michigan, and DANIEL EICHENGER, in his official capacity as Director of the Michigan Department of Natural Resources

                                Defendants,

_____/

Case No.  _____

Judge  _____

WILLIAM A. SIKKEL, IV (P57953)
Attorneys for Plaintiff
Sikkel & Associates, PLC
42 East Lakewood Blvd.
Holland, Michigan 49424
(616) 394-3025

_____/

## COMPLAINT

      Plaintiffs Nathan Vander Zwaag, Chase Turkstra and Henry Jon Freriks, by and through their attorneys, Sikkel & Associates PLC, and in support of its complaint against the Defendants, their employees, agents, and successors in office, allege the following upon information and belief:

## INTRODUCTION

1.     This emergency action seeks injunctive and declaratory relief against Governor Gretchen Whitmer and Michigan DNR Director Daniel Eichinger, for the unlawful infringement on Plaintiffs' constitutional rights of liberty.

2.     Specifically, this case is a civil rights action brought under the Fourteenth Amendment to the United States Constitution and 42 U.S.C § 1983, challenging Governor Whitmer's Executive Order No. 2020-42, both on its face and as applied, which criminalizes the use of a motorboat either alone, or with members of one's own household.

3.     Plaintiffs see a declaration that enforcement of Executive Order 2020-42 to prohibit the use of a motorboat either alone or with member's of one's own household violates Plaintiffs fundamental rights of liberty and due process as set forth in this complaint; a temporary and permanent injunction enjoining the enforcement of Executive Order 2020-42 for such purposes; and an award of attorney fees and costs pursuant to 42 U.S.C. § 1983, and other applicable laws.

## JURISDICTION AND VENUE

4.     Because this matter presents a claim under a federal statute, 42 U.S.C. § 1983, and raises issues over rights arising out of the Fourteenth Amendment of the U.S. Constitution, this Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331.

5.     This Court has personal jurisdiction over all of the parties.  All parties reside in the State of Michigan.  Governor Whitmer and Director Eichinger hold official offices and transact business in the State of Michigan.

6.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by *Ex parte Young*, 209 U.S. 123 (1908), and by the general legal and equitable powers of this Court.

7.      Plaintiffs' claim for their reasonable costs of litigation, including attorneys' fees and expenses, is authorized by 42 U.S.C. § 1988 and other applicable law.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claims occurred in this district, and that the Defendants are domiciled and have their official offices in this district.

## PARTIES

9.      Plaintiffs Nathan Vander Zwaag Chase Turkstra and Henry Jon Freriks, are adult citizens of the United States and reside in Ottawa County, Michigan.

10.     Plaintiffs each own a motorboat which they desire to use either alone, or with members of their own household, in and on Michigan waterways.

11.     Defendant Gretchen Whitmer is, and at all times relevant to this Complaint was, the Governor of the State of Michigan.

12.     Pursuant to her authority as Governor, Defendant Whitmer issued Executive Order 2020-42.

13.     Defendant Whitmer is sued in her official capacity only.

14.     Defendant Daniel Eichinger is, and at all times relevant to this Complaint was, the Director of the Michigan Department of Natural Resources.

15.     Pursuant to his authority as Director of the Department of Natural Resources, Director Eichinger is empowered to enforce the laws of the State of Michigan with regard to the use of Michigan's waterways and other natural resources.

16.     As described below, the Michigan Department of Natural Resources has enforced Executive Order 2020-42 by writing citations and issuing warnings to those who violate the order.

## STATEMENT OF FACTS

17.     On Thursday April 9, 2020 Governor Whitmer issued Executive Order 2020-42, which is described as a "[t]emporary requirement to suspend activities that are not necessary to sustain or protect life."  A true and correct copy of this order is attached to this Complaint as **Exhibit A**, and is found at https://www.michigan.gov/coronavirus/0,9753,7-406-98178_98455-525278--,00.html.

18.     By its terms, Executive Order 2020-42 will remain in effect until April 30, 2020 at 11:59 pm.

19.     A "willful violation" of Executive Order 2020-42 is a misdemeanor.

20.     Executive Order 2020-42 states "[s]ubject to the exceptions in section 7 of this order, all individuals living within the State of Michigan are ordered to stay at home or at their place of residence."

21.     Section 7(a) of the Order allows the following exception:

a.     Individuals may leave their home or place of residence, and travel as necessary:

1.     To engage in outdoor physical activity, consistent with remaining at least six feet from people from outside the individual's household. Outdoor physical activity includes walking, hiking, running, cycling, kayaking, canoeing, or other similar physical activity, as well as any comparable activity for those with limited mobility.

22.     On Friday April 10, 2020 Governor Whitmer issued additional guidance regarding Executive order 2020-42 in the form of a FAQ on the Michigan.gov website.  A true and accurate copy of the FAQ is attached as **Exhibit B**, and can be found at https://www.michigan.gov/coronavirus/0,9753,7-406-98178_98455-525278--,00.html.

23.     The FAQ states the following regarding boating:

**Q: Does boating constitute "outdoor activity" under the new executive order?**

A: Physical outdoor activity like kayaking, canoeing, and sailing is permitted under the order, but using a motorboat, a jet ski, or other similar watercraft is not. Any outdoor activity permitted under the order, including boating, must be done in a manner consistent with social distancing, and individuals should use only their own equipment to prevent the transmission of the virus through the touching of shared surfaces. Additionally, in accordance with section 2 of the order, persons not part of a single household may not boat together.

While some boating is permitted under the order, the provision of boating services or supplies does not itself constitute critical infrastructure work, and businesses and operations may not designate workers to come to work for that purpose. As needed, these businesses and operations may designate workers to leave their home for work if their in-person presence is strictly necessary to conduct the minimum basic operations listed in section 4(b) of the order. Minimum basic operations do not include serving members of the public. The order, however, does permit in-person work necessary to maintain the safety and sanitation of sites otherwise open to the public for outdoor physical activity permitted under the order. All in-person work permitted under the order must be done in accordance with the mitigation measures listed in section 10 of the order.

(Exhibit B).

24. On Friday April 10, 2020 the Michigan Department of Natural Resources posted information on its webpage that stated use of a motorized boat for recreational purposes is prohibited. A copy of that guidance is attached as Exhibit C and can be found at https://www.michigan.gov/dnr/0,4570,7-350-79137_79770_98926---,00.html. With regard to the use of a motor-powered boat the Michigan DNR stated the following:

Am I able to use my motor-powered boat for recreational purposes, including fishing?

No. Under the governor's revised **"Stay Home, Stay Safe" Executive Order 2020-42**, physical outdoor activity, such as kayaking, canoeing and sailing, remains permissible. However, **the use of a motorboat, jet ski or similar watercraft (includes gas and electric motors) is not permitted** for the duration of the Executive Order, which is currently set to expire at 11:59 p.m. April 30. Prohibition on the use of motorized watercraft is reflected in the governor's **Frequently Asked Questions document** that explains and interprets Executive Order 2020-42.

The DNR has received many reports about heavy use of boat launches across the state and the subsequent congregation of people at these launches in violation of social distancing requirements, and in a manner that threatens public health. In addition,

people who use motorized watercraft typically need to procure secondary services for their craft, such as parts and gasoline, that could unnecessarily increase contact with others and spread disease. The hope is that the prohibition on the use of motorized watercraft will reduce the movement of, and contact among, people with the intent of slowing the spread of the coronavirus.

Please recreate locally and responsibly. Long distance travel is prohibited unless it is for a purpose considered critical under the governor's "Stay Home, Stay Safe" Executive Order.

(Updated April 13, 2020)

25.     According to an April 13, 2020 article in the Detroit News, on April 11 and April 12, 2020 the Michigan Department of Natural Resources issued five citations and 323 warnings for violating Executive Order 2020-42.   A true and accurate copy of this article is attached as Exhibit D and can be found at:

https://www.detroitnews.com/story/news/local/michigan/2020/04/13/michigan-dnr-issued-boaters-5-tickets-323-warnings-violating-stay-home-order/2986076001/.

26.     Plaintiffs each own and regularly use a motorboat for fishing and other recreational purposes on and in Michigan waterways.

27.     Due to the outbreak of COVID-19, Plaintiffs have implemented social distancing measures recommended by the Centers for Disease Control and Prevention, specifically including remaining at least six feet from people not in the same household.

28.     Plaintiffs desire to use their motor-powered boats for fishing and recreational purposes, either alone, or with members of their own families, and to do so while respecting the recommended social distancing measures.

29.     As a result of Executive Order 2020-42, Plaintiffs have been unable to use their motor-powered boats in a manner otherwise permitted under Michigan and local governmental law, while maintaining social distancing recommendations.

30.     Plaintiffs fear criminal prosecution should they use their motor-powered boats in violation of Executive Order 2020-42.

31.     As of April 15, 2020, Ottawa County where Plaintiffs all reside, has reported a total of 71 individuals as diagnosed with COVID-19, with 2 reported deaths in the county.  (Data taken from the Ottawa County website which can be found at https://www.miottawa.org/Health/OCHD/coronavirus.htm.

32.     According to the United States Census Bureau, Ottawa County has an estimated population of more than 291,000 people.  (Data taken from https://www.census.gov/quickfacts/fact/table/ottawacountymichigan/PST045218).

33.     The number of individuals diagnosed with COVID-19 represents .024 percent of the population within the County.

34.     The right to liberty is highlighted in the Preamble to the United States Constitution which states "[w]e the People of the United States, in Order to form a more perfect Union . . . and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America."

35.     The Fourteenth Amendment to the Unites States Constitution confirms this right of Liberty stating "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."   United States Constitution, Amendment XIV, Section 1.

36.     Liberty and the freedom of movement is a fundamental constitutional right.

37.    "Without doubt, [liberty] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

38.    Executive Order 2020-42, and the enforcement of same by Defendants has, and will continue to cause, irreparable damage to Plaintiff's constitutional rights.

## COUNT I

### SUBSTANTIVE DUE PROCESS – 42 U.S.C § 1983

39.    Plaintiff incorporates all of the preceding allegations as if fully restated herein.

40.    The portion of Executive Order 2020-42 which prohibits the use of a motorboat either alone, or with one's own household, violates Plaintiffs' rights to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, in that such restriction, both on its face and as applied to Plaintiffs, impinges upon Plaintiffs fundamental interest of liberty.

41.    Executive Order 2020-42 is not narrowly tailored, nor is it the least restrictive means for advancing whatever government interest the Defendants may claim the law advances.

42.    The Centers For Disease Control Guidelines recommend that individuals remain at least 6 feet apart from people who are not members of the same household.

43.    A motorboat can be used either alone, or with members of one's own household, while maintaining at least 6 feet of separation from those who are not within one's own household.

44.     Prior to issuing Executive Order 2020-42 Defendant Whitmer had issued Executive Order 2020-21 and guidance which allowed the use of a motorboat either alone or with members of one's own household.

45.     The Department of Natural Resources in their FAQ attached as Exhibit C, explained that the reason for the subsequent ban on the use of motorboats was the result of "heavy use of boat launches across the state and the subsequent congregation of people at these launches in violation of social distancing requirements."

46.     The Department of Natural Resources in their FAQ attached as Exhibit C also hypothecated that those who own motorboats may need to procured secondary services such as parts and gasoline.

47.     The presence of those at boat launches who were violating social distancing requirements could have been addressed through enforcement of the original Executive Order.  A total ban on the use of a motorboat is an overreaction and overly broad means of trying to accomplish the goals of the Executive Order.  It would be the equivalent of banning the use of a vehicle if too many people were speeding on the highway, instead of issuing tickets to those who were speeding.

48.     The concerns about procuring secondary services such as parts and gasoline are also not sufficient justification for the absolute ban on the use of motorboats.  Many stores selling parts or providing secondary services are closed, or the parts can be ordered online.  And if the services or parts are not available, those individuals would simply not be able to use their motorboat.  Gasoline can easily be obtained while maintaining social distancing and paying at the pump.  Again, these concerns are an overreaction and an overly broad means of trying to accomplish the stated goals of the Executive Order.

49.     That portion of Executive Order 2020-42 which provides an absolute ban on the use of a motorboat fails the strict scrutiny test in that it is not narrowly tailored to further the government's compelling interest of maintaining public health.

50.     Given the small number of reported cases within Ottawa County, Michigan, the absolute ban of motorboating anywhere within the County is overly broad and not narrowly tailored to further the government's compelling interest of maintaining public health.

51.     By issuing and enforcing the ban on motorboats, Governor Whitmer and Director Eichenger, each acting under the color of state law, are depriving and will continue to deprive Plaintiffs and other similarly situated residents of Michigan the rights secured by the United States Constitution, including the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

52.     Plaintiffs are therefore entitled to a declaration of unconstitutionality, both on its face and as applied, and injunctive relief prohibiting the enforcement of the motorboat ban.

## COUNT II

## VIOLATION OF EMERGENCY POWERS OF GOVERNOR ACT OF 1945 (MCL 10.31)

53.     Plaintiff incorporates all of the preceding allegations as if fully restated herein.

54.     Executive Order 2020-42 indicates that the authority to issue such order is based in part on the Emergency Powers of the Governor Act of 1945, MCL 10.31, et. seq., as well as the Emergency Management Act (MCL 30.403 et. seq.), and Article V, Section 1 of the Michigan Constitution of 1963.

55.     The Emergency Powers of the Governor Act of 1945 allows the Governor to declare a state of emergency and "designate the area involved" and to "promulgate reasonable orders, rules and regulations . . . necessary to protect life . . . within the affected area."

56.     Executive Order 2020-42 applies to the entire state of Michigan.

57.     The COVID-19 disease has not presented a unified threat to the entire State of Michigan.

58.     Unlike some of the areas in the southeastern portion of Michigan, Ottawa County has experienced a low rate of infection and few cases.

59.     The factors that may justify invoking a state of emergency in some parts of Michigan do not apply to Ottawa County.

60.     As a public emergency is not present in Ottawa County, Governor Whitmer lacked the authority to issue Executive Order 2020-42 statewide, and within Ottawa County.

61.     Executive Order 2020-42 therefore is not supported by state law and should not apply to the residents of Ottawa County.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs ask this Court:

A.      To declare that Defendants violated Plaintiffs' fundamental constitutional rights as set forth in this Complaint;

B.      To enjoin Defendants' enforcement of Executive Order 2020-42 as applied to restrict Plaintiffs' use of a motorboat on Michigan waterways, either alone or with members of one's own household;

C.      To declare that a public emergency does not exist within Ottawa County, Michigan, and that Governor Whitmer lacked the authority to impose Executive Order to Ottawa County, Michigan, and that such order is therefore of no effect in Ottawa County, Michigan.

D.      To award Plaintiffs' their reasonable attorney fees, costs, and expenses pursuant

to 42 U.S.C. § 1988 and other applicable law;

E.      To grant such other and further relief as this Court should find just and proper.

Dated:  April 16, 2020                                    Respectfully submitted,


By:  ___/s/ *William A. Sikkel*_____
    William A. Sikkel, IV (P57953)
    Attorneys for Plaintiff

BUSINESS ADDRESS:
    42 East Lakewood Blvd.
    Holland, Michigan 49424
    (616) 394-3025
    bsikkel@sikkellaw.com



**A**

**EXECUTIVE ORDER**

**No. 2020-42**

**Temporary requirement to suspend activities that
are not necessary to sustain or protect life**

**Rescission of Executive Order 2020-21**

The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved vaccine or antiviral treatment for this disease.

 On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, I issued Executive Order 2020-4. This order declared a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended, MCL 30.401 et seq., and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended, MCL 10.31 et seq.

 In the three weeks that followed, the virus spread across Michigan, bringing deaths in the hundreds, confirmed cases in the thousands, and deep disruption to this state's economy, homes, and educational, civic, social, and religious institutions. On April 1, 2020, in response to the widespread and severe health, economic, and social harms posed by the COVID-19 pandemic, I issued Executive Order 2020-33. This order expanded on Executive Order 2020-4 and declared both a state of emergency and a state of disaster across the State of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, and the Emergency Powers of the Governor Act of 1945.

The Emergency Management Act vests the governor with broad powers and duties to "cop[e] with dangers to this state or the people of this state presented by a disaster or emergency," which the governor may implement through "executive orders, proclamations, and directives having the force and effect of law." MCL 30.403(1)-(2). Similarly, the Emergency Powers of the Governor Act of 1945 provides that, after declaring a state of emergency, "the governor may promulgate reasonable orders, rules,

and regulations as he or she considers necessary to protect life and property or to bring the emergency situation within the affected area under control." MCL 10.31(1).

To suppress the spread of COVID-19, to prevent the state's health care system from being overwhelmed, to allow time for the production of critical test kits, ventilators, and personal protective equipment, and to avoid needless deaths, it is reasonable and necessary to direct residents to remain at home or in their place of residence to the maximum extent feasible. To that end, on March 23, 2020, I issued Executive Order 2020-21, ordering all people in Michigan to stay home and stay safe. The order limited gatherings and travel, and required workers who are not necessary to sustain or protect life to stay home.

The measures put in place by Executive Order 2020-21 have been effective, but this virus is both aggressive and persistent: on April 8, 2020, Michigan reported 20,346 confirmed cases of COVID-19 and 959 deaths from it. To win this fight, and to protect the health and safety of our state and each other, we must be just as aggressive and persistent. Though we have all made sacrifices, we must be steadfast. Accordingly, with this order, I find it reasonable and necessary to reaffirm the measures set forth in Executive Order 2020-21, clarify them, and extend their duration to April 30, 2020. This order takes effect on April 9, 2020 at 11:59 pm. When this order takes effect, Executive Order 2020-21 is rescinded.

Acting under the Michigan Constitution of 1963 and Michigan law, I order the following:

1. This order must be construed broadly to prohibit in-person work that is not necessary to sustain or protect life.

2. Subject to the exceptions in section 7 of this order, all individuals currently living within the State of Michigan are ordered to stay at home or at their place of residence. Subject to the same exceptions, all public and private gatherings of any number of people occurring among persons not part of a single household are prohibited.

3. All individuals who leave their home or place of residence must adhere to social distancing measures recommended by the Centers for Disease Control and Prevention ("CDC"), including remaining at least six feet from people from outside the individual's household to the extent feasible under the circumstances.

4. No person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations.

   a. For purposes of this order, workers who are necessary to sustain or protect life are defined as "critical infrastructure workers," as described in sections 8 and 9 of this order.

   b. For purposes of this order, workers who are necessary to conduct minimum basic operations are those whose in-person presence is strictly necessary to allow the business or operation to maintain the value of inventory and equipment, care for animals, ensure security, process transactions (including payroll and employee benefits), or facilitate the ability of other workers to work remotely.

   Businesses and operations must determine which of their workers are necessary to conduct minimum basic operations and inform such workers of that designation. Businesses and operations must make such designations in writing, whether by electronic message, public website, or other appropriate means. Workers need not carry copies of their designations when they leave the home or place of residence for work.

   Any in-person work necessary to conduct minimum basic operations must be performed consistently with the social distancing practices and other mitigation measures described in section 10 of this order.

5. Businesses and operations that employ critical infrastructure workers may continue in-person operations, subject to the following conditions:

   a. Consistent with sections 8 and 9 of this order, businesses and operations must determine which of their workers are critical infrastructure workers and inform such workers of that designation. Businesses and operations must make such designations in writing, whether by electronic message, public website, or other appropriate means. Workers need not carry copies of their designations when

they leave the home or place of residence for work. Businesses and operations need not designate:

1. Workers in health care and public health.

2. Workers who perform necessary government activities, as described in section 6 of this order.

3. Workers and volunteers described in section 9(d) of this order.

b. In-person activities that are not necessary to sustain or protect life must be suspended until normal operations resume.

c. Businesses and operations maintaining in-person activities must adopt social distancing practices and other mitigation measures to protect workers and patrons, as described in section 10 of this order. Stores that are open to the public must also adhere to the rules described in section 11 of this order.

6. All in-person government activities at whatever level (state, county, or local) that are not necessary to sustain or protect life, or to support those businesses and operations that are necessary to sustain or protect life, are suspended.

a. For purposes of this order, necessary government activities include activities performed by critical infrastructure workers, including workers in law enforcement, public safety, and first responders.

b. Such activities also include, but are not limited to, public transit, trash pick-up and disposal (including recycling and composting), activities necessary to manage and oversee elections, operations necessary to enable transactions that support the work of a business's or operation's critical infrastructure workers, and the maintenance of safe and sanitary public parks so as to allow for outdoor activity permitted under this order.

c.  For purposes of this order, necessary government activities include minimum basic operations, as described in section 4(b) of this order. Workers performing such activities need not be designated.

d.  Any in-person government activities must be performed consistently with the social distancing practices and other mitigation measures to protect workers and patrons described in section 10 of this order.

7.  Exceptions.

    a.  Individuals may leave their home or place of residence, and travel as necessary:

        1.  To engage in outdoor physical activity, consistent with remaining at least six feet from people from outside the individual's household. Outdoor physical activity includes walking, hiking, running, cycling, kayaking, canoeing, or other similar physical activity, as well as any comparable activity for those with limited mobility.

2.  To perform their jobs as critical infrastructure workers after being so designated by their employers. (Critical infrastructure workers who need not be designated under section 5(a) of this order may leave their home for work without being designated.)

3.  To conduct minimum basic operations, as described in section 4(b) of this order, after being designated to perform such work by their employers.

4.  To perform necessary government activities, as described in section 6 of this order.

5.  To perform tasks that are necessary to their health and safety, or to the health and safety of their family or household members (including pets). Individuals may, for example, leave the home or place of residence to secure medication or to seek medical or dental care that is necessary to address a medical emergency or to preserve the health and safety of a household or family member (including

procedures that, in accordance with a duly implemented nonessential procedures postponement plan, have not been postponed).

6. To obtain necessary services or supplies for themselves, their family or household members, their pets, and their vehicles.

A. Individuals must secure such services or supplies via delivery to the maximum extent possible. As needed, however, individuals may leave the home or place of residence to purchase groceries, take-out food, gasoline, needed medical supplies, and any other products necessary to maintain the safety, sanitation, and basic operation of their residences. Individuals may also leave the home to drop off a vehicle to the extent permitted under section 9(i) of this order.

B. Individuals should limit, to the maximum extent that is safe and feasible, the number of household members who leave the home for any errands.

7. To care for a family member or a family member's pet in another household.

8. To care for minors, dependents, the elderly, persons with disabilities, or other vulnerable persons.

9. To visit an individual under the care of a health care facility, residential care facility, or congregate care facility, to the extent otherwise permitted.

10. To attend legal proceedings or hearings for essential or emergency purposes as ordered by a court.

11. To work or volunteer for businesses or operations (including both religious and secular nonprofit organizations) that provide food, shelter, and other necessities of life for economically disadvantaged or otherwise needy individuals, individuals who need assistance as a result of this emergency, and people with disabilities.

12. To attend a funeral, provided that no more than 10 people are in attendance at the funeral.

   b. Individuals may also travel:

      1. To return to a home or place of residence from outside this state.

      2. To leave this state for a home or residence elsewhere.

3. Between two residences in this state, through April 10, 2020. After that date, travel between two residences is not permitted.

4. As required by law enforcement or a court order, including the transportation of children pursuant to a custody agreement.

   c. All other travel is prohibited, including all travel to vacation rentals.

8. For purposes of this order, critical infrastructure workers are those workers described by the Director of the U.S. Cybersecurity and Infrastructure Security Agency in his guidance of March 19, 2020 on the COVID-19 response (available **here**). This order does *not* adopt any subsequent guidance document released by this same agency.

   Consistent with the March 19, 2020 guidance document, critical infrastructure workers include some workers in each of the following sectors:

   a. Health care and public health.

   b. Law enforcement, public safety, and first responders.

   c. Food and agriculture.

d.  Energy.

e.  Water and wastewater.

f.  Transportation and logistics.

g.  Public works.

h.  Communications and information technology, including news media.

i.  Other community-based government operations and essential functions.

j.  Critical manufacturing.

k.  Hazardous materials.

•  Financial services.

m.  Chemical supply chains and safety.

▪  Defense industrial base.

9.  For purposes of this order, critical infrastructure workers also include:

a.  Child care workers (including workers at disaster relief child care centers), but only to the extent necessary to serve the children or dependents of workers required to perform in-person work as permitted under this order. This category includes individuals (whether licensed or not) who have arranged to care for the children or dependents of such workers.

b.  Workers at suppliers, distribution centers, or service providers, as described below.

1.  Any suppliers, distribution centers, or service providers whose continued operation is necessary to enable, support, or facilitate another business's or operation's critical infrastructure work may designate their workers as critical infrastructure workers, provided that only those workers whose in-person presence is necessary to enable, support, or facilitate such work may be so designated.

2.  Any suppliers, distribution centers, or service providers whose continued operation is necessary to enable, support, or facilitate the necessary work of suppliers, distribution centers, or service providers described in subprovision (1) of this subsection may designate their workers as critical infrastructure workers, provided that only those workers whose in-person presence is necessary to enable, support, or facilitate such work may be so designated.

3.  Consistent with the scope of work permitted under subprovision (2) of this subsection, any suppliers, distribution centers, or service providers further down the supply chain whose continued operation is necessary to enable, support, or facilitate the necessary work of other suppliers, distribution centers, or service providers may likewise designate their workers as critical infrastructure workers, provided that only those workers whose in-person presence is necessary to enable, support, or facilitate such work may be so designated.

4.  Suppliers, distribution centers, and service providers that abuse their designation authority under this subsection shall be subject to sanctions to the fullest extent of the law.

c.  Workers in the insurance industry, but only to the extent that their work cannot be done by telephone or remotely.

d.  Workers and volunteers for businesses or operations (including both religious and secular nonprofit organizations) that provide food, shelter, and other necessities of life for economically disadvantaged or otherwise needy individuals,

individuals who need assistance as a result of this emergency, and people with disabilities.

e.  Workers who perform critical labor union functions, including those who administer health and welfare funds and those who monitor the well-being and safety of union members who are critical infrastructure workers, provided that any administration or monitoring should be done by telephone or remotely where possible.

f.  Workers at retail stores who sell groceries, medical supplies, and products necessary to maintain the safety, sanitation, and basic operation of residences, including convenience stores, pet supply stores, auto supplies and repair stores, hardware and home maintenance stores, and home appliance retailers.

g.  Workers at laundromats, coin laundries, and dry cleaners.

h.  Workers at hotels and motels, provided that the hotels or motels do not offer additional in-house amenities such as gyms, pools, spas, dining, entertainment facilities, meeting rooms, or like facilities.

i.  Workers at motor vehicle dealerships who are necessary to facilitate remote and electronic sales or leases, or to deliver motor vehicles to customers, provided that showrooms remain closed to in-person traffic.

10. Businesses, operations, and government agencies that continue in-person work must adhere to sound social distancing practices and measures, which include but are not limited to:

a.  Developing a COVID-19 preparedness and response plan, consistent with recommendations in Guidance on Preparing Workplaces for COVID-19, developed by the Occupational Health and Safety Administration and available **here**. Such plan must be available at company headquarters or the worksite.

b. Restricting the number of workers present on premises to no more than is strictly necessary to perform the business's, operation's, or government agency's critical infrastructure functions or its minimum basic operations.

c. Promoting remote work to the fullest extent possible.

d. Keeping workers and patrons who are on premises at least six feet from one another to the maximum extent possible.

e. Increasing standards of facility cleaning and disinfection to limit worker and patron exposure to COVID-19, as well as adopting protocols to clean and disinfect in the event of a positive COVID-19 case in the workplace.

f. Adopting policies to prevent workers from entering the premises if they display respiratory symptoms or have had contact with a person with a confirmed diagnosis of COVID-19.

g. Any other social distancing practices and mitigation measures recommended by the CDC.

11. Any store that remains open for in-person sales under section 5 or 9(f) of this order must:

a. Establish lines to regulate entry in accordance with subsections (c) and (d) of this section, with markings for patrons to enable them to stand at least six feet apart from one another while waiting. Stores should also explore alternatives to lines, including by allowing customers to wait in their cars for a text message or phone call, to enable social distancing and to accommodate seniors and those with disabilities.

b. Consider establishing curbside pick-up to reduce in-store traffic and mitigate outdoor lines.

c. For stores of less than 50,000 square feet of customer floor space, limit the number of people in the store (including employees) to 25% of the total occupancy limits established by the State Fire Marshal or a local fire marshal.

d. For stores of more than 50,000 square feet:

1. Limit the number of customers in the store at one time (excluding employees) to 4 people per 1,000 square feet of customer floor space. The amount of customer floor space must be calculated to exclude store areas that are closed under subprovision (2) of this subsection.

2. Close areas of the store—by cordoning them off, placing signs in aisles, posting prominent signs, removing goods from shelves, or other appropriate means— that are dedicated to the following classes of goods:

A. Carpet or flooring.

B. Furniture.

C. Garden centers and plant nurseries.

D. Paint.

3. By April 13, 2020, refrain from the advertising or promotion of goods that are not groceries, medical supplies, or items that are necessary to maintain the safety, sanitation, and basic operation of residences.

4. Create at least two hours per week of dedicated shopping time for vulnerable populations, which for purposes of this order are people over 60, pregnant women, and those with chronic conditions like heart disease, diabetes, and lung disease.

e. The director of the Department of Health and Human Services is authorized to issue an emergency order varying the capacity limits described in subsections (c) and (d) of this section as necessary to protect the public health.

12. No one shall advertise or rent a short-term vacation property except as necessary to assist in housing a health care professional or volunteer aiding in the response to the COVID-19 crisis.

13. Nothing in this order should be taken to supersede another executive order or directive that is in effect, except to the extent this order imposes more stringent limitations on in-person work, activities, and interactions. Consistent with prior guidance, a place of religious worship, when used for religious worship, is not subject to penalty under section 17 of this order.

14. Nothing in this order should be taken to interfere with or infringe on the powers of the legislative and judicial branches to perform their constitutional duties or exercise their authority.

15. This order takes effect on April 9, 2020 at 11:59 pm and continues through April 30, 2020 at 11:59 pm. When this order takes effect, Executive Order 2020-21 is rescinded. All references to that order in other executive orders, agency rules, letters of understanding, or other legal authorities shall be taken to refer to this order.

16. I will evaluate the continuing need for this order prior to its expiration. In determining whether to maintain, intensify, or relax its restrictions, I will consider, among other things, (1) data on COVID-19 infections and the disease's rate of spread; (2) whether sufficient medical personnel, hospital beds, and ventilators exist to meet anticipated medical need; (3) the availability of personal protective equipment for the health-care workforce; (4) the state's capacity to test for COVID-19 cases and isolate infected people; and (5) economic conditions in the state.

17. Consistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor.

Given under my hand and the Great Seal of the State of Michigan.

B

OFFICIAL WEBSITE OF MICHIGAN.GOV

# Coronavirus 

CORONAVIRUS

## EO 2020-42: Does boating constitute "outdoor activity" under the new executive order?

Physical outdoor activity like kayaking, canoeing, and sailing is permitted under the order, but using a motorboat, a jet ski, or other similar watercraft is not. Any outdoor activity permitted under the order, including boating, must be done in a manner consistent with social distancing, and individuals should use only their own equipment to prevent the transmission of the virus through the touching of shared surfaces. Additionally, in accordance with section 2 of the order, persons not part of a single household may not boat together.

While some boating is permitted under the order, the provision of boating services or supplies does not itself constitute critical infrastructure work, and businesses and operations may not designate workers to come to work for that purpose. As needed, these businesses and operations may designate workers to leave their home for work if their in-person presence is strictly necessary to conduct the minimum basic operations listed in section 4(b) of the order. Minimum basic operations do not include serving members of the public. The order, however, does permit in-person work necessary to maintain the safety and sanitation of sites otherwise open to the public for outdoor physical activity permitted under the order. All in-person work permitted under the order must be done in accordance with the mitigation measures listed in section 10 of the order.



**MICHIGAN.GOV HOME**
**ADA**
**MICHIGAN NEWS**
**POLICIES**

COPYRIGHT 2020 STATE OF MICHIGAN

C

**OFFICIAL WEBSITE OF MICHIGAN.GOV**

THE DEPARTMENT OF
# NATURAL RESOURCES



DNR / ABOUT US / NEWSROOM

# Frequently Asked Questions about DNR facilities, activities and the Coronavirus (COVID-19)

## GOVERNOR'S EXECUTIVE ORDER

The Michigan Department of Natural Resources has taken numerous actions to keep Michigan residents safe and healthy during the global coronavirus (COVID-19) pandemic. We have announced a series of facility and event closures, cancellations and modifications. Many public meetings have been postponed or moved to a webinar or conference call format.

Governor Whitmer's **"Stay Home, Stay Safe" Executive Order** states that individuals may leave their home or place of residence, and travel as necessary, to engage in outdoor activity, including walking, hiking, running, cycling, or any other recreational activity consistent with remaining at least 6 feet from people outside an individual's household. Visitors should not travel long distances, unless it is for a purpose considered critical. Nonessential travel could unintentionally increase the spread of COVID-19.

Follow the **DNR's COVID-19 response webpage** for the latest information about DNR facilities and services.

## FISHING AND BOATING

| Can I still go fishing? | **DNR COVID-19 Response** |
|---|---|

Yes. The executive order states that individuals may leave their home or place of residence, and travel as necessary, to engage in outdoor activity, including walking, hiking, running, cycling, or any other recreational activity consistent with remaining at least 6 feet from people outside an individual's household. (Updated March 31, 2020)

---

**Can I still go boating?**

---

**Non-motorized boating, such as kayaking, canoeing and sailing, falls within the outdoor activities permitted under the "Stay Home, Stay Safe" Executive Order.** Any outdoor activity, including boating, must be done in a manner consistent with social distancing, and individuals should use only their own equipment to prevent the transmission of the virus through the touching of shared surfaces. Additionally, persons not part of a single household may not boat together.

While some boating is permitted under the order, the provision of boating services or supplies does not itself constitute critical infrastructure work. Accordingly, marinas, canoe liveries, and other similar businesses and operations may not designate workers to come to work for that purpose. As needed, however, these businesses and operations may designate workers to leave their home for work if their in-person presence is strictly necessary to conduct the minimum basic operations listed in section 4(b) of the order. Minimum basic operations do not include serving members of the public, but do permit work necessary to maintain the safety and sanitation of sites otherwise open to the public for outdoor recreation. All in-person work permitted under the order must be done in accordance with section 5 of the order, including the mitigation measures listed in section 5(c).

(Updated April 10, 2020)

---

**DNR COVID-19 Response**

Am I able to use my motor-powered boat for recreational purposes, including fishing?

No. Under the governor's revised **"Stay Home, Stay Safe" Executive Order 2020-42**, physical outdoor activity, such as kayaking, canoeing and sailing, remains permissible. However, **the use of a motorboat, jet ski or similar watercraft (includes gas and electric motors) is not permitted** for the duration of the Executive Order, which is currently set to expire at 11:59 p.m. April 30. Prohibition on the use of motorized watercraft is reflected in the governor's **Frequently Asked Questions document** that explains and interprets Executive Order 2020-42.

The DNR has received many reports about heavy use of boat launches across the state and the subsequent congregation of people at these launches in violation of social distancing requirements, and in a manner that threatens public health. In addition, people who use motorized watercraft typically need to procure secondary services for their craft, such as parts and gasoline, that could unnecessarily increase contact with others and spread disease. The hope is that the prohibition on the use of motorized watercraft will reduce the movement of, and contact among, people with the intent of slowing the spread of the coronavirus.

Please recreate locally and responsibly. Long distance travel is prohibited unless it is for a purpose considered critical under the governor's "Stay Home, Stay Safe" Executive Order.

(Updated April 13, 2020)

| How far can I travel to go fishing? |
| --- |

| Am I able to travel from my home to a second residence property to hunt or fish or stay if I am only doing so with members of my immediate family? |
| --- |

| Will the DNR extend the term of 2019 fishing licenses? |
| --- |

| How can I get a new fishing license or 2020 fishing guide? | **DNR COVID-19 Response** |
| --- | --- |

| Are charter fishing or guided fishing opportunities using boats, canoes or other marine vessels still available? |
| --- |

Are DNR boating access sites open?

Do I still need a Recreation Passport to access boating access sites and other recreation areas?

If I purchased a Recreation Passport will I now get a refund?

Does my boat need to be registered with the Secretary of State when it is not allowing title transfers at this time?

Are fishing tournaments and other competitive fishing events currently permitted?

Will the DNR be stocking fish?

Will the DNR conduct egg-takes this spring?

How can I find out where fish have been stocked or where to fish for various species?

Am I able to contact DNR fisheries personnel to get a tagged fish checked?

Are fish hatcheries and fisheries research stations open?

# STATE PARKS, RECREATION AREAS AND FORESTS

Are state parks open?

Why is Tippy Dam Recreation Area closed?

~~DNR COVID-19~~
**Response**

Are family picnics allowed on state forest lands?

By keeping state parks open, doesn't this contradict the governor's executive order?

Do I still need a Recreation Passport to get into a state park or other recreation areas?

If I purchased a Recreation Passport will I now get a refund?

Are state park headquarter buildings, visitor centers, contact stations, museums and historic structures open?

Will state parks and recreation areas be open next week?

## CAMPING

Can I go camping at a state park or state forest campground?

Is dispersed camping on state lands still allowed?

Am I able to make reservations for camping or overnight lodging?

What do I do if I have a camping or lodging reservations?

If I cancel or modify my reservation this year, am I subject to penalties?

When will dump and fill stations be available?

**DNR COVID-19
Response**

## TRAILS

Are off-road vehicle and all-terrain vehicle trails still open?

| Do I need an ORV/ATV permit to ride? |
|---|

| How can I get an ORV/ATV permit? |
|---|

| Can I still run the Happy Little 5K? |
|---|

## BURN PERMITS, FUELWOOD AND CAMPFIRES

| Am I able to get a burn permit to burn debris? |
|---|

| Can I cut fuelwood on state forest lands? |
|---|

| Can I have campfire? |
|---|

## HUNTING

| Is hunting still allowed? |
|---|

| Am I able to travel from my home to a second residence property to hunt or fish or stay if I am only doing so with members of my immediate family? |
|---|

| How can I get a hunting license? |
|---|

| Do hunting regulations still apply? |
|---|

| How can I find out what the hunting rules are or when the seasons are? |
|---|

DNR COVID-19 Response

| Am I still able to train my dogs on state land? |
|---|

## SHOOTING RANGES

| Are shooting ranges open? |
| --- |

## MICHIGAN HISTORY CENTER AND STATE MUSEUMS

| Are the archives, museums and historic sites open for visitors? |
| --- |
| Can I still contact the Archives with research questions? |

## ADDITIONAL INFORMATION

For current and up-to-date information regarding the Coronavirus visit **Michigan.gov/Coronavirus** or **CDC.gov/Coronavirus.**

**Summary of the Governor's, "Stay Home, Stay Safe," Executive Order.**

**"Memorandum On Identification Of Essential Critical Infrastructure Workforce During Covid-19 Response"**

**State of Michigan's FAQ page on the Executive Order.**

To find out if a business is exempt from the executive order, contact **LEO-Coronavirus@michigan.gov** or Suzy Shkreli at **ShkreliS@michigan.gov.**



**DNR COVID-19 Response**

**Make a Donation**
**FOIA**

**MICHIGAN.GOV HOME**
**ADA**
**MICHIGAN NEWS**

**POLICIES**

**COPYRIGHT 2020 STATE OF MICHIGAN**

**DNR COVID-19
Response**

# D



# Five tickets, 323 warnings given to boaters violating stay-home order

**Beth LeBlanc**, The Detroit News    Published 6:59 p.m. ET April 13, 2020

Michigan Department of Natural Resources conservation officers issued five citations over the weekend to boaters in violation of the governor's stay-home order, but none of them involved the use of a motorized boat (/story/news/local/michigan/2020/04/10/whitmer-hits-reverse-no-motorized-boats-allowed-under-stay-home-order/5135504002/), according to the department.

DNR officers gave 323 verbal warnings to boaters for violations of Gov. Gretchen Whitmer's executive order, ranging from social distancing, operating a motorized boat or boating with people from outside an individual's household, said department spokesman Ed Golder.

**Buy Photo**



**Fishermen ply the Trenton Channel of the Detroit River in search of walleye near Trenton, Mich., Friday, April 3, 2020.** *(Photo: Andy Morrison, The Detroit News)*

Of the five citations issued, three were issued for boating with people from more than one household and two for "failing to observe social distancing requirements." All of the citations were issued in Region Two, which includes the bottom half of the lower peninsula.

In total, conservation officers gave a verbal warning or citation related to the executive order to 1 in 5 boaters they had contact with over the weekend.

"Only when we encounter people who refuse to comply even after being warned do we issue citations," said Golder. "Most people have been understanding, if sometimes disappointed, and have complied voluntarily."

The maximum criminal penalty for the disregarding the order is $500 and/or 90 days in jail, he said.

The Michigan Department of Health and Human services also can issue $1,000 civil fines for violations of the order but those can't be levied under a DNR ticket.

The citations and verbal warning issued do not include those from local law enforcement or Michigan State Police, Golder said. Michigan State Police issued no citations related to the motorized boating edict, said Lori Dougovito, a spokeswoman for the agency.

Whitmer's ban on motorized boating came under her second executive order expanded and tightened her stay-home order. It was a reversal of her stance a week prior, when her office said boating would be allowed in Michigan.

While canoes, sailboats and kayaks are allowed under the order, jet skis, motorboats or other comparable watercraft are prohibited, Whitmer's office clarified Friday.

The Department of Natural Resources on Friday said the ban on motorized boats was an attempt to "reduce the movement of, and contact among, people" to slow the virus spread.

"The DNR has received many reports about heavy use of boat launches across the state and the subsequent congregation of people at these launches in violation of social distancing requirements, and in a manner that threatens public health," the DNR wrote Friday on its website.

"In addition, people who use motorized watercraft typically need to procure secondary services for their craft, such as parts and gasoline, that could unnecessarily increase contact with others and spread disease."

The order prompted disappointment among boaters and industry officials who argued the ban on motorized boating was an overreaction to reports of overcrowding.

"Those specific boat launches could have been closed and the individuals violating social distancing ticketed," said Nicki Polan, executive director for the Michigan Boating Industry Association.

"Additionally, to ban registered boaters who pay registration fees which support the state's launch ramps and not ban kayakers who pay nothing into the Michigan State Waterways Fund is salt on the wound," Polan continued in a statement. "Kayakers fuel their cars on their way to the launch ramp no different than trailer boaters."

Paddlers and sailors must be "part of a single household," according to the state, and any activities "must be done in a manner consistent with social distancing, and individuals should use only their own equipment to prevent the transmission of the virus through the touching of shared surfaces."

*eleblanc@detroitnews.com*

Read or Share this story: https://www.detroitnews.com/story/news/local/michigan/2020/04/13/michigan-dnr-issued-boaters-5-tickets-323-warnings-violating-stay-home-order/2986076001/

